IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| **MARILYN HODGES,** | CIVIL ACTION |
| *Plaintiff,* | |
| v. | NO. 22-2201 |
| **SUNRISE SENIOR LIVING MANAGEMENT, INC.,** *et al.*, | |
| *Defendants.* | |

## MEMORANDUM OPINION

**Goldberg, J.**                                                                                                    February 21, 2023

Plaintiff Marilyn Hodges, as administratrix of the estate of Marilyn Alston, alleges that Defendants Sunrise Senior Living Management, Inc., SZR Abington Al Opco, LLC, and Sunrise Abington Assisted Living LLC (collectively "Defendants") provided negligent care to Ms. Alston while Ms. Alston was a resident of Defendants' facility, resulting in her untimely passing. Defendants seek dismissal of all of Plaintiff's claims, pursuant to Federal Rule of Civil Procedure 12(b)(6), on grounds of timeliness, failure to adequately plead a claim for relief, and immunity under state and federal law. For the following reasons, I will deny the Motion.

**I.    FACTS IN THE COMPLAINT**

The following facts are set forth in the Complaint.[1]

---

[1]    In deciding a motion under Federal Rule of Civil Procedure 12, the court must accept all factual allegations in the complaint as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading, the plaintiff may be entitled to relief. Atiyeh v. Nat'l Fire Ins. Co. of Hartford, 742 F. Supp. 2d 591, 596 (E.D. Pa. 2010).

Beginning on September 27, 2018, Ms. Alston was a patient resident of Defendants' facility known as "Sunrise of Abington." At the time of her admission, Defendants allegedly knew that Ms. Alston had a history of bronchitis and COPD. (Compl. ¶¶ 9–10.)

According to the Complaint, on April 10, 2020, while living at Defendants' facility, Ms. Alston developed a terrible cough, which was brought to Defendants' attention by her family. On April 12, 2020, in the midst of the COVID-19 pandemic, Defendants' facility restricted visitors from entering the facility. Defendants allegedly did not administer medication to Ms. Alston, including medication for her cough, until on or after April 14, 2020. (Id. ¶¶ 11–13.)

Plaintiffs allege that, on April 14, 2020, Defendants placed Ms. Alston into quarantine and then failed to "check, assess and treat her." Ms. Alston's cough worsened, and she experienced shortness of breath and fever for days. (Id. ¶ 14.)

On April 17, 2020, Ms. Alston was transferred to the hospital after her family demanded a full assessment of her and discovered her fever. On admission to the hospital, Ms. Alston was diagnosed with pneumonia of the right left lungs and kidney failure. Her condition deteriorated, and, on April 21, 2020, she was placed on a ventilator. On May 2, 2020, Ms. Alston passed away. (Id. ¶ 15.)

Plaintiff also alleges that during her stay at Defendants' facility, Ms. Alston suffered bedsores, knee injury, infections, sepsis, severe dehydration, acute kidney injury, respiratory distress, and failure to thrive, all of which led to her untimely passing. Plaintiff posits that Ms. Alston died as a result of Defendants' negligence. (Id. ¶¶ 16, 18.)

Plaintiff filed a complaint in state court alleging claims for professional negligence, wrongful death, and survival. On June 3, 2022, Defendants removed the action to federal court and filed the current Motion to Dismiss the Complaint.

## II.   STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(6), a defendant bears the burden of demonstrating that the plaintiff has not stated a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); see

also Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005). The United States Supreme Court has recognized that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quotations omitted). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" and "only a complaint that states a plausible claim for relief survives a motion to dismiss." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. A complaint does not show an entitlement to relief when the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct. Id.

The United States Court of Appeals for the Third Circuit has detailed a three-step process to determine whether a complaint meets the pleadings standard. Bistrian v. Levi, 696 F.3d 352 (3d Cir. 2014). First, the court outlines the elements a plaintiff must plead to state a claim for relief. Id. at 365. Next, the court must "peel away those allegations that are no more than conclusions and thus not entitled to the assumption of truth." Id. Finally, the court "look[s] for well-pled factual allegations, assume[s] their veracity, and then 'determine[s] whether they plausibly give rise to an entitlement to relief.'" Id. (quoting Iqbal, 556 U.S. at 679). The last step is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. (quoting Iqbal, 556 U.S. at 679).

### III.    DISCUSSION

#### A.    **Whether Plaintiff's Claims Are Time Barred**

##### 1.    Professional Negligence

Federal courts sitting in diversity treat statutes of limitations as substantive, and therefore plaintiffs are bound by the applicable state law.[2] Jaworowski v. Ciasulli, 490 F.3d 331, 333 (3d Cir.

---

[2]    A statute of limitations defense may be raised in a Rule 12(b)(6) motion when "the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations." Robinson v. Johnson, 313 F.3d 128, 135 (3d Cir. 2002) (quotation omitted).

3

2007). Under Pennsylvania law, claims for professional negligence are governed by a two-year statute of limitations. 42 Pa. Cons. Stat. § 5524; Estate of Goldberg ex rel. Goldberg v. Nimoityn, 14-cv-980, 2014 WL 6908013, at *6 (E.D. Pa. Dec. 9, 2014). "Pennsylvania favors strict application of the statutes of limitation." Wachovia Bank, N.A. v. Ferretti, 935 A.2d 565, 572 (Pa. Super. Ct. 2007). As a general rule, "the statute of limitations begins to run as soon as the right to institute and maintain a suit arises," (i.e., upon the occurrence of the alleged breach of duty). Estate of Goldberg, 2014 WL 6908013, at *6 (quoting Fine v. Checcio, 870 A.2d 850, 857 (Pa. 2005)).

If, however, the injury was not readily ascertainable at the time of the breach, the "discovery rule" may serve to toll the limitations period. Knopick v. Connelly, 639 F.3d 600, 607–08 (3d Cir. 2011) (recognizing the discovery rule's application in medical malpractice cases). "Where the discovery rule does apply, [a limitations period] begins to run where the plaintiff knew or in the exercise of reasonable diligence should have known of the injury and its cause." Id. at 607. "[T]he point of time at which the injured party should reasonably be aware that he or she has suffered an injury is generally an issue of fact to be determined by the jury . . . . Only where the facts are so clear that reasonable minds cannot differ may the commencement of the limitation period be determined as a matter of law." Id. at 611 (quotations omitted).

Here, the Complaint asserts that Ms. Alston was transferred out of Defendants' care and to the hospital on April 17, 2020, where she remained until her death on May 2, 2020. (Compl. ¶ 15.) Based on that allegation, Defendants contend that any negligent action would have necessarily occurred on or before April 17, 2020, meaning that Plaintiff would have needed to file suit by April 17, 2022. Because the Complaint was not filed until April 29, 2022, Defendants contend that any professional negligence claims are time barred.

Defendants, however, fail to analyze the impact of the discovery rule. According to the Complaint, Ms. Alston's pneumonia, kidney failure, and fever were not discovered until sometime after she left Defendants' care and was admitted to the hospital. Taking these facts as true, there remains a

4

factual dispute as to whether Ms. Alston was aware that she had suffered an injury caused by Defendants' negligence. (Compl. ¶ 15.) Indeed, Ms. Alston did not pass away from her injuries until May 2, 2020—less than two years before the Complaint was filed—thus suggesting that Plaintiff acted with reasonable diligence in discovering the injury and its cause. As the facts as pled in the Complaint do not permit a determination of the appropriate limitations period as a matter of law, I decline to dismiss the medical negligence claims at this juncture.

        2.      <u>Survival Claim</u>

With respect to Plaintiff's survival and wrongful death action, the Medical Care Availability and Reduction of Error Act ("MCARE") sets forth a separate statute of limitations. Specifically, section 513 provides, in its entirety:

> **(a) General rule.**—Except as provided in subsection (b) or (c), no cause of action asserting a medical professional liability claim may be commenced after seven years from the date of the alleged tort or breach of contract.
>
> **(b) Injuries caused by foreign object.**—If the injury is or was caused by a foreign object unintentionally left in the individual's body, the limitation in subsection (a) shall not apply.
>
> **(c) Injuries of minors.**—No cause of action asserting a medical professional liability claim may be commenced by or on behalf of a minor after seven years from the date of the alleged tort or breach of contract or after the minor attains the age of 20 years, whichever is later.
>
> **(d) Death or survival actions.**—If the claim is brought under 42 Pa.C.S. § 8301 (relating to death action) or 8302 (relating to survival action), the action must be commenced within two years after the death in the absence of affirmative misrepresentation or fraudulent concealment of the cause of death.
>
> **(e) Applicability.**—No cause of action barred prior to the effective date of this section shall be revived by reason of the enactment of this section.
>
> **(f) Definition.**—For purposes of this section, a "minor" is an individual who has not yet attained the age of 18 years.

40 P.S. § 1303.513.

In Dubose v. Quinlan, 173 A.3d 634, 643 (Pa. 2017), the Pennsylvania Supreme Court focused on subsection (d) to decide whether it constituted a statute of limitations or a statute of repose.[3] Id. at 642. It found that "[s]ection 513(d) establishes a specific statute of limitations for survival and wrongful death actions in medical professional liability cases that prevails over the general statute of limitations for personal injuries actions contained in 42 Pa.C.S. § 5524(2)." Id. at 647. The Court reasoned that "[i]t is within the legislature's power to enact a more specific statute of limitations for medical professional liability negligence that results in death, and where the plain language of the statute indicates that it did so, we must give effect to that language." Id. at 648. Ultimately, it concluded that

---

[3] The United States Supreme Court explained the distinction between a statute of limitations and a statute of repose:

> Statutes of limitations and statutes of repose both are mechanisms used to limit the temporal extent or duration of liability for tortious acts. Both types of statute can operate to bar a plaintiff's suit, and in each instance, time is the controlling factor. There is considerable common ground in the policies underlying the two types of statute. But the time periods specified are measured from different points, and the statutes seek to attain different purposes and objectives. . . .
>
> In the ordinary course, a statute of limitations creates "a time limit for suing in a civil case, based on the date when the claim accrued." . . . Measured by this standard, a claim accrues in a personal-injury or property-damage action "when the injury occurred or was discovered." . . .
>
> A statute of repose, on the other hand, puts an outer limit on the right to bring a civil action. That limit is measured not from the date on which the claim accrues but instead from the date of the last culpable act or omission of the defendant. A statute of repose "bar[s] any suit that is brought after a specified time since the defendant acted (such as by designing or manufacturing a product), even if this period ends before the plaintiff has suffered a resulting injury." . . . The statute of repose limit is "not related to the accrual of any cause of action; the injury need not have occurred, much less have been discovered." . . . The repose provision is therefore equivalent to "a cutoff," . . . in essence an "absolute . . . bar" on a defendant's temporal liability.

CTS Corp. v. Waldburger, 573 U.S. 1, 7–9 (2014) (internal citations omitted).

when contrasted with subsection (a), whose language sounds as a statute of repose, subsection (d) could only be interpreted as a statute of limitations.  Id.

In order to avoid to impact of this statute of limitations, Defendants claim that section 513 was deemed unconstitutional by the Pennsylvania Supreme Court in Yanakos v. UPMC, 218 A.3d 1214 (Pa. 2019), and thus is inapplicable here.  Defendants, however, misinterpret the holding of that case.  In Yanakos, the Pennsylvania Supreme Court explicitly characterized the issue before it as "whether the seven-year statute of repose in Section 1303.513*(a)* of [MCARE] comports with Article 1, Section 11 of the Pennsylvania Constitution."  Id. at 1216 (emphasis added).  It held that the statute of repose in subsection (a) was, in fact, unconstitutional because it infringes on the state constitutional right to a remedy.  Id. at 1226–27.  At no point was the constitutionality of the statute of limitations in subsection (d) at issue.  Indeed, in Reibenstein v. Barax, 236 A.3d 1162, 1163 (Pa. Super Ct. 2020)—a case decided after Yanakos—the Pennsylvania Superior Court reaffirmed the viability of § 515(d)'s statute of limitations.

Here, based on the statute of limitations in § 515(d), Plaintiff had two years after Ms. Alston's death, *i.e.*, until May 2, 2022, in which to file a complaint.  As Plaintiff initiated suit on April 17, 2022, the wrongful death action is timely.

### B. Whether Plaintiff's Claims Are Adequately Pled

Defendant next argues that the Complaint fails to sufficiently plead a professional negligence claim.  I disagree.

Medical malpractice is defined as the "unwarranted departure from generally accepted standards of medical practice resulting in injury to a patient, including all liability-producing conduct arising from the rendition of professional medical services."  Toogood v. Owen J. Rogal, D.D.S., P.C., 824 A.2d 1140, 1145 (Pa. 2003).  The underlying elements of negligence in a medical malpractice claim are a "duty owed by the physicians to the patient, a breach of that duty by the physician, that the breach was

7

the proximate cause of the harm suffered, and the damages suffered were a direct result of the harm." Id. (quotations omitted).

Defendants contend that Plaintiff has not adequately pled a professional negligence claim because "the Complaint does not make a single reference to any provisions of the personal care home statute, let alone allege that Defendants breached any of the specific standards or duties imposed by that statute." (Defs.' Mem. Supp. Mot. to Dismiss 10.)  Instead, according to Defendants, Plaintiff alleges vague duties of care unsupported by any legal authority.  Moreover, Defendants assert that even if the Complaint sufficiently alleged the existence of a duty, the professional negligence claims lack any supporting facts establishing that Defendants breached a duty.  (Id. at 11.)

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief."  The Complaint here complies with that mandate.  It alleges that "Defendants owed [Ms. Alston] a duty to possess and exercise that degree of professional skill, care, and knowledge ordinarily possessed and exercised by and/or required of practitioners within the health care profession and/or within their field of specialization." (Compl. ¶ 5.)  It also states that "Defendants undertook and/or assumed a duty to Plaintiff to render reasonable, proper, adequate, prompt medical care and to avoid harm to her, which Defendants breached." (Id. ¶ 22.)  Plaintiff was not required to set forth chapter and verse of each of the statutory provisions that apply to personal care homes.  Moreover, the Complaint adequately pleads a breach of duty by alleging that Ms. Alston developed a terrible cough, but Defendants failed to provide proper care by (a) delaying in administering medication; (b) placing Ms. Alston into quarantine without checking on her; (c) delaying medical care; and (d) engaging in actions that resulted in Decedent's bedsores, knee injury, infections, dehydration, kidney injury, etc.  (Id. ¶¶ 11–17.)  Such allegations, while perhaps bareboned, are sufficient to put Defendants on notice of the basis of the claims against them.  Taking these allegations as true, as I must on a Rule 12(b)(6) motion, I find that Plaintiff has adequately pled claims of professional negligence.

In turn, I find that the Complaint sufficiently pleads wrongful death and survival claims. As Defendants correctly note, survival and wrongful death actions are not new theories of liability but merely allow a tort claim of a decedent to be prosecuted. Becker v. Carbon Cnty., 177 F. Supp. 3d 841, 847 (M.D. Pa. 2016). A plaintiff must state all the elements of a valid tort in order to maintain a claim under the Pennsylvania Wrongful Death and Survival Act. Id. As Plaintiff has plausibly stated a claim for professional negligence, she has, in turn, pled an adequate wrongful death and survival claim.

### C.      Immunity Under 35 Pa.C.S. § 7101

Finally, Defendants contend that they are immune from Plaintiff's claims under 35 Pa.C.S. § 7101, et seq. and the Public Readiness and Emergency Preparedness Act ("PREP Act").

#### 1.      35 Pa.C.S. § 7101, *et seq.*

Under 35 Pa.C.S. § 7704(a):

> Neither the Commonwealth, nor any Commonwealth agency, nor any political subdivision, nor, except in cases of willful misconduct, gross negligence, recklessness or bad faith, the agents, employees or representatives of any of them engaged in any emergency services activities, . . . nor, except in cases of willful misconduct, gross negligence, recklessness or bad faith, any person, firm, corporation or an agent or employee of any of them engaged in emergency services activities, while complying with or attempting to comply with this part or any rule or regulation promulgated pursuant to the provisions of this part, shall be liable for the death of or any injury to persons or loss or damage to property as a result of that activity.

Id. The statute defines "emergency services" as "[t]he preparation for and the carrying out of functions . . . includ[ing], without limitation . . . medical and health services . . . [and] emergency welfare services." 35 Pa. Cons. Stat. § 7102.

Nothing in the Complaint suggests that Defendants were engaged in "emergency services activities" while complying with a state-promulgated rule or regulation. Indeed, taking the allegations of the Complaint as true, Defendants were operating a for-profit nursing home. While they were legally required to implement certain measures in connection with the pandemic, such actions do not automatically qualify them as providing "emergency services." Indeed, to carry that logic forward, any

9

business that required masks or restricted visitors during the pandemic would be immunized from liability for any of their actions.

Moreover, as noted by Plaintiff, the Complaint does not allege that it was Defendants' use of COVID-19 protocols or countermeasures (such as use of various medications or temperature screenings) that resulted in Ms. Alston's injury, but rather Defendants' failure to use these protocols. (See, e.g., Compl. ¶¶ 25(l)–(z).) Accordingly, I find that Defendants are not entitled to immunity under 35 Pa.C.S. § 7704(a).

### 2. The PREP Act

Alternatively, Defendants contend that they are entitled to immunity under the federal Public Readiness and Emergency Preparedness Act ("PREP Act").

The Secretary of Health and Human Services has invoked the provisions of the PREP Act by declaring that COVID-19 constitutes a public health emergency. See Declaration Under the Public Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID-19, 85 Fed. Reg. 15198-01 (Mar. 10, 2020). The PREP Act protects "covered persons" from suit with respect to claims "arising out of, relating to, or resulting from the administration to or the use by an individual of a covered countermeasure if a declaration [that a disease or other health condition constitutes a public health emergency] has been issued with respect to such countermeasure" 42 U.S.C. §§ 247d-6d(a)(1). This provision:

> applies to any claim for loss that has a causal relationship with the administration to or use by an individual of a covered countermeasure, including a causal relationship with the design, development, clinical testing or investigation, manufacture, labeling, distribution, formulation, packaging, marketing, promotion, sale, purchase, donation, dispensing, prescribing, administration, licensing, or use of such countermeasure.

Id. § 247d-6d(a)(2)(B).

The Act defines "covered countermeasure" as a "qualified pandemic or epidemic product," "a security countermeasure," and certain approved or licensed drugs, biological products or devices. Id. §

247d-6d(i)(1).  It further defines "covered person" in part as "a person or entity that is — (i) a manufacturer of such countermeasure; (ii) a distributor of such countermeasure; (iii) a program planner of such countermeasure; (iv) a qualified person who prescribed, administered, or dispensed such countermeasure; or (v) an official, agent, or employee of a person or entity described in clause (i), (ii), (iii), or (iv)."  Id. at § 247d-6d(i)(2).

Defendants claim that they are "covered persons" because they are both "a program planner of such countermeasure" and "a qualified person who prescribed, administered, or dispensed such countermeasure."  Moreover, they contend that, according to the Complaint, they used or administered various countermeasures at the nursing home, including masks and thermometers, daily COVID-19 screenings, Robitussin, Tylenol, cough syrup, and albuterol, all in an effort to treat Ms. Alston's cough and other COVID-19 symptoms.  They posit that all of these covered countermeasures—expressly alleged or referenced by Plaintiff as a basis for her claims—invoke the immunity protections of the PREP Act.

Assuming for purposes of this Motion that Defendants are "covered persons"—a conclusion which Plaintiff disputes and an issue which I need not decide now—Defendants have failed to conclusively establish that the allegations of the Complaint entitled them to PREP Act immunity.  In a decision affirmed by the Third Circuit, Judge Kevin McNulty, of the United States District Court for the District of New Jersey, reviewed the history of the PREP Act in relation to a wrongful death and medical malpractice action against operators of nursing facilities for allegedly failing to take appropriate action to safeguard against the spread of coronavirus among residents at the facilities.  Judge McNulty found that the Act "leaves room for ordinary claims of negligent or substandard care."  Estate of Maglioli v. Andover Subacute Rehab. Ctr I, 478 F. Supp. 3d 518, 532 (D.N.J. Aug. 12, 2020), aff'd, 16 F.4th 393 (3d Cir. 2021).  Declining to dismiss the complaint based on the PREP Act, he held:

> Here . . . the complaints do not allege that Plaintiffs' injuries arose from, e.g., Defendants' administration to them of vaccines or medicines (or for that matter protective gear)—activities that the PREP Act promotes by

11

>   affording immunity. Nor do Plaintiffs run afoul of conflict preemption by seeking a state law ruling requiring what federal law prohibits, or prohibiting what federal law promotes. Indeed, Plaintiffs are claiming (*inter alia*) that the Defendants committed negligence in that, among other things, they *failed* to take countermeasures, some of them allegedly federally required. Whether that is true must await fact finding, but that is the claim. Plaintiffs thus assert that—because of those failures and other, *see infra*—the quality of the care they received fell short of what a nursing home facility should have done to protect them from infection by the coronavirus. Such claims concerning the quality of care do not fall within the scope of the PREP Act.

Id. at 532 (emphasis in original).

Consistent with that ruling, numerous other courts in this Circuit have concluded that "the PREP Act does not shield a covered individual from claims arising out of its *failure* to administer or use a covered countermeasure. Testa v. Broomall Operating Co., L.P., No. 21-cv-5148, 2022 WL 3563616, at *4 (E.D. Pa. Aug. 18, 2022) (citing Beaty v. Delaware Cty., No. 21-cv-1617, 2021 WL 4026373, at *2 (E.D. Pa. Aug. 5, 2021) ("The term 'covered countermeasure' does not include 'social distancing, quarantining, [or] lockdowns.' Nor does a defendant's failure to take countermeasures fall within the scope of the Act's protection, even if such action was federally mandated." (internal citations omitted)); Sherod v. Comprehensive Healthcare Mgmt. Servs., LLC, No. 20-cv-1198, 2020 WL 6140474, at *7 (W.D. Pa. Oct. 16, 2020) ("The allegations asserted by Plaintiff in her Complaint directly suggest that the decedent died because Brighton failed to use countermeasures . . . . Thus, Plaintiff's allegations do not fall within the purview of the PREP Act.")).

Here, like the above cases, the Complaint is replete with allegations about Defendants' failures to act, which allegedly resulted in Ms. Alston's passing. Specifically, Plaintiff contends that Defendants are negligent for conduct which includes, but is not limited to:

- Failing to have adequate staffing levels at the facility, and failing to have the proper policies and procedures in place to prevent a staff shortage to ensure patients receive proper care;

- Failing to properly hire, train, and/or supervise nurses, aides, orderlies and/or healthcare staff in proper care and/or handling of patients, in particular Plaintiff, Marilyn Alston (decedent);

- Failing to properly supervise and assist medically frail patients and failing to implement and adhere to a quality control standard with regards to patient safety;

- Failing to perform bloodwork, regularly obtain vitals, hydrate Plaintiff decedent, and monitor her fluids;

- Failing to timely transfer Ms. Alston to the hospital or refer her for medical evaluation;

- Failing to identify, assess, and treat Plaintiff decedent's cough, dehydration, and signs and symptoms of infection, and failing to document her medical condition and change in status, in spite of a history of bronchitis and COPD;

- Failing to communicate change in status with physicians and family so that they could take steps to prevent further harm, and failing to document Plaintiff's health conditions and need for medication;

- Failing to use PPE, masks, isolation, testing and other measures to reduce and/or prevent the spread, infection and complications of COVID-19 and prevent decedent from passing away;

- Failing to timely test Plaintiff decedent for COVID-19.

(Compl. ¶ 26.)

Most of these allegations have nothing to do with COVID-19 at all, let alone the use of prescribed COVID-19 countermeasures. Certainly, fact discovery may reveal that these allegations are not true or that Ms. Alston's passing resulted from actions for which Defendants would have immunity under the PREP Act. At this stage of the litigation, however, I decline to make any such legal ruling.

## IV.  CONCLUSION

In light of the foregoing, I will deny Defendants' Motion to Dismiss. An appropriate Order follows.